NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIACI SAINT HONORE,<br><br>          Plaintiff,<br><br>    v.<br><br>M/V BILBAO BRIDGE, her engines, tackle, appurtenances, etc., *in rem* and EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., OCEAN NETWORK EXPRESS PTE. LTD d/b/a ONE and WEST END EXPRESS CO., INC., *in personam*,<br><br>          Defendants. | Case No. 21cv11254 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

Siaci Saint Honore ("Siaci") filed this suit against M/V Bilbao Bridge ("Ship"), *in rem*, Expeditors International of Washington, Inc. ("Expeditors"), Ocean Network Express Pte. Ltd. ("One"), and West End Express Co., Inc. ("West End"), *in personam* (collectively, "Defendants"), seeking recovery for cosmetic product units that were allegedly thieved or pilfered. Pursuant to Fed. R. Civ. P. 12(b)(6), West End moves to dismiss ten claims brought by Siaci in the Amended Verified Complaint in Admiralty ("Amended Complaint") and crossclaims for contribution and indemnification brought by One and the Ship ("Vessel Interests"). D.E. 42-1. The Court decides this motion on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons set forth below, West End's motion will be **GRANTED**.

## I.      BACKGROUND[1]

Siaci, a subrogee[2] of Kendo Holdings, Inc., filed this action to recover the value of a shortage of a certain number of cartons in a cosmetics shipment from Italy to New Jersey.  *See* D.E. 13 "Amended Complaint" ¶¶ 20, 23.  Expeditors is a licensed Customs Broker that is typically hired to perform services for cargo importers and owners to facilitate cargo imports into the United States that comply with government import regulations.  *Id.* ¶¶ 7-8.  One is a vessel operating common carrier.  *Id.* ¶ 9.  West End is a motor carrier that operates trucking services for import shipments.  *Id.* ¶ 10.  Expeditors, One, and West End were all engaged to facilitate the transportation of the cosmetic shipment at issue here from Italy to New Jersey.

On or about May 6, 2020, Expeditors issued or caused to be issued a sea waybill[3] numbered 6400181289 ("Sea Waybill"), which provided for the transport of 706 cartons of cosmetics ("Cosmetics Shipment") stowed in a sealed shipping container numbered TCLU4699358.  *Id.* ¶ 15.  The Sea Waybill provided that the Cosmetics Shipment be loaded aboard the Ship in Genoa, Italy on that same date for transport to New York and subsequent discharge and delivery from the Port of New York & New Jersey.  *Id.*  On that same date, One also issued or caused to be issued a bill of lading[4] numbered ONEYGOAA18208900 ("Bill of Lading") for the transport of the

---

[1] The facts in this section are taken from the well-pled allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the instant motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] "Subrogation" is "the substitution of the insurer in place of the insured for the purpose of claiming indemnification from a third person for the loss covered by insurance."  E. Patterson, Essentials of Insurance Law, 147, 148 (2d ed. 1957).  As subrogee, Siaci has the authority to act in the name of the subrogated insurer(s) and interested cargo underwriters of the subject cargo and is entitled to maintain this action on behalf of the shipper, consignee and/or owner of the subject cargo. Amended Complaint ¶ 6.

[3] A waybill is "[a w]ritten document made out by [the] carrier listing point of origin and destination, consignor and consignee, and describing goods included in shipment[.]"  Black's Law Dictionary 1429 (5th ed. 1979).

[4] A bill of lading is "[a] basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers."  *S. Pacific Transp. Co. v.*

Cosmetics Shipment.  *Id.* ¶ 16.  The Bill of Lading provided that the Cosmetics Shipment: was received in alleged good order, condition, and quantity in Genoa, Italy; was loaded aboard the Ship in Genoa, Italy; was transported on the Ship from Genoa, Italy to the Port of New York & New Jersey; arrived and was discharged at the Port of New York & New Jersey on May 18, 2020; and delivered from the pier in Newark, New Jersey on May 20, 2020.  *Id.*  For the Cosmetics Shipment to clear United States' Customs, and be discharged from the pier in Newark, New Jersey, Expeditors issued and/or obtained a carrier's release order.  *Id.* ¶ 18.  This would allow for West End to receive and effect delivery of the Cosmetics Shipment.  *Id.*

On May 20, 2020, West End received the Cosmetics Shipment from the pier in Newark, New Jersey by truck, but did not deliver the same to its ultimate delivery location, XPO Logistics in Monroe Township, New Jersey, until May 28, 2020.  *Id.* ¶ 19.  As the distributor for Siaci's insured, XPO Logistics unloaded and tallied the contents of the Cosmetics Shipment and identified a shortage of cartons missing from the Cosmetics Shipment.  *Id.* ¶ 20.  The value of the missing cartons is estimated to be $49,325.32.  *Id.* ¶ 24.  The missing cartons are alleged to have been thieved or pilfered at some point while in transit from Italy to New Jersey, but before receipt by XPO Logistics.  *Id.* ¶ 20.

Siaci brings: four claims against Defendants as carriers: "Count One – Breach of Contract;" "Count Two – Negligence;" "Count Three – Breach of Bailment;" and "Count Four – Conversion," *id.* ¶¶ 24-38; two claims against West End as a carrier: "Count Five – Material & Unreasonable Deviation" and "Count Six – Gross Negligence," *id.* ¶¶ 39-48; and five claims against West End

---

*Commercial Metals Co.*, 456 U.S. 336, 342 (1982) (internal citation omitted).  "[T]he bill of lading is a title document, while the waybill describes the freight, its route, and the carriers involved in its shipment. The waybill accompanies the freight throughout the shipment and into the hands of the destination carrier."  *CSX Transp. Co. v. Novolog Bucks County*, 502 F.3d 247, 251 n. 4 (3d Cir. 2007) (internal citation and quotation marks omitted).

as a warehouseman: "Count I – Breach of Contract," "Count II – Breach of Warranty," "Count III – Negligence," "Count IV – Breach of Bailment," and "Count V – Gross Negligence," *id.* ¶¶ 49-65.  Siaci also seeks the value of the missing cartons, $49,325.32, as relief for all claims, as well as punitive damages for the gross negligence claims.  *Id.* ¶¶ 24, 46.

In its answer to the Amended Complaint, One brings crossclaims against Expeditors, West End, and the Ship seeking contribution and indemnification.  D.E. 28 ¶ 41.  In its answer to the Amended Complaint, the Ship also brings crossclaims against its co-defendants seeking contribution and indemnification.  D.E. 25 ¶ 117.

West End now moves to dismiss all claims, except for "Count One – Breach of Contract," brought against it in the Amended Complaint.  D.E. 47-1 "Mot." at 1.  West End also moves to dismiss Vessel Interests' contribution and indemnification crossclaims.  *Id.*  Being fully-briefed, the Court decides this motion.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted).  Under this standard, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  A reviewing court is not to give credit to a complaint's "bald assertions" or "legal conclusions."

4

*Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  In weighing a motion to dismiss, a court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 556 U.S. at 684.

The same analysis applies with respect to a motion to dismiss a crossclaim filed pursuant to Fed. R. Civ. P. 12(b)(6).  *See Merchants Mut. Ins. Co. v. 215 14th St., LLC*, Civ. No. 19-9206, 2020 U.S. Dist. LEXIS 23664, 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020).

## III.   DISCUSSION

### A.   Scope of the FAAAA's Preemption Clause

To understand the scope of federal preemption of state law pursuant to the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 108 Stat. 1605-06, it is helpful to first understand how preemption functions.  Generally, federal law preempts state law when either: (1) a congressional statute explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that one can reasonably conclude that Congress left no room for state regulation in that field.  *See Cipollone v. Liggett Group, Inc.*, 506 U.S. 504, 523 (1992).  A presumption against preemption exists.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (holding that federal laws do not supersede traditional state police powers unless Congress clearly intends to do so).

In 1980, Congress deregulated interstate trucking to encourage rates and services be set by the market rather than by government regulation.  *See* Motor Carrier Act of 1980, 94 Stat. 793.  Then, in 1994, Congress bolstered this effort by including a specific provision in the FAAAA that expressly provides for preemption of state regulation of the trucking industry, 49 U.S.C. § 14501(c)(1).  That specific provision provides that states "may not enact or enforce a law,

regulation, or other provision [] related to a price, route, or service of any motor carrier [] with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

The overarching goal of preemption pursuant to the FAAAA is to avoid situations where "state requirements could easily lead to a patchwork of state service-determining laws, rules and regulations."  *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008).  The Supreme Court has outlined the following four guiding principles for applying preemption pursuant to the FAAAA:

> (1) state enforcement actions having a connection with, or reference to carrier rates, routes, or services are preempted; (2) preemption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) with respect to preemption in this context, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) preemption occurs at least where state laws have a significant impact related to Congress's deregulatory and preemption-related objectives.

*Id.* at 370 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992)) (interpreting identical provision in Airline Deregulation Act of 1978, 49 U.S.C. § 1305(a)(1)) (quotation marks omitted).

With these guiding principles in mind, the scope of federal preemption pursuant to the FAAAA is understood as broad and encompasses even state laws that only have an indirect effect on the price, route, or service of a motor carrier.  *Id.*  In *Dan's City Used Car, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013), the Supreme Court concluded that the term "transportation" in the FAAAA even includes the storage and handling of goods when those services are "related to the movement" of property.  Taking one step further, courts have even found that the FAAAA preempts not only state statutes and administrative regulations, but also state law-based private claims, such as negligence, conversion, and breach of bailment, because such claims fall under the "other provisions with the force of law" language of the provision.  *See, e.g.*, *Alpine Fresh, Inc. v. Jala*

6

*Trucking Corp.*, 181 F. Supp. 3d 250, 257 (D.N.J. 2016) (dismissing breach of bailment and negligence claims because the FAAAA expressly preempts these state common law claims); *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 2019 U.S. Dist. LEXIS 6747, 2019 WL 192900, at *4 (D.N.J. Jan. 4, 2019) (finding that state common law claims, including those for conversion and negligence, are preempted by the FAAAA), *aff'd*, 796 F. App'x 96 (3d Cir. 2020); *Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998); *Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 512 (N.D. Tex. 2020); *Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665, 672 (N.D. Ga. 1997).

But the FAAAA's scope does have some limits.  It will not preempt state laws that merely affect carrier prices, routes, or services in a "tenuous, remote, or peripheral [] manner." *Rowe*, 552 U.S. at 371.  Additionally, the FAAA contains a few narrow statutory exceptions, where preemption will not occur.  Lastly, courts have consistently found that the FAAAA does not preempt routine breach of contract claims because they only seek enforcement of "privately ordered obligations" and as such do not amount to state-imposed laws, rules, or other provision having the effect of law. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228-29, 233 (1995) (concluding that a breach of contract claim was not preempted, in the context of the Airline Deregulation Act (which the FAAAA's language mirrors and courts interpret similarly), because "[a] remedy confined to a contract's terms simply holds parties to their agreements"); *see also Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, 2017 U.S. Dist. LEXIS 142926, at *6 (D.N.J. Sept. 5, 2017) (declining to dismiss breach of contract claim because the FAAA does not preempt routine breach of contract claims) (citations omitted).

Here, West End asserts that the FAAAA preempts all but one claim[5] brought by Siaci: "Count Two – Negligence;" "Count Three – Breach of Bailment;" and "Count Four – Conversion," with respect to Defendants as carriers; "Count Five – Material & Unreasonable Deviation" and "Count Six – Gross Negligence," with respect to West End as a carrier; and "Count I – Breach of Contract," "Count II – Breach of Warranty," "Count III – Negligence," "Count IV – Breach of Bailment," and "Count V – Gross Negligence," with respect to West End as a warehouseman. Mot. at 1.  Under similar reasoning, West End asserts that the FAAAA also preempts Vessel Interests' crossclaims for contribution and indemnification.  *Id.*  In light of the FAAAA's broad scope, the Court agrees with West End.

**B.       Siaci's Claims**

*1.       Counts Two, Three, Four, Five, and Six, and Prayer for Punitive Damages of the Amended Complaint are Preempted by the FAAAA*

The Court first addresses West End's contention that the FAAAA preempts: Siaci's state law-based negligence, breach of bailment, and conversion claims brought against Defendants as carriers; and Siaci's state law-based material and unreasonable deviation and gross negligence claims, as well as Siaci's prayer for punitive damages, brought against West End as a carrier.  If those claims are preempted by the FAAAA, then they should be dismissed.  For the reasons that follow, the Court agrees with West End.

In support of its position that the FAAAA's preemptive authority is sufficiently broad to encompass these claims, West End cites to a series of persuasive cases in which courts concluded that the FAAAA preempts state law-based claims of, *inter alia*, negligence, breach of bailment, and conversion.  The Court notes that the reasoning in these cases also applies to claims for gross negligence and material and unreasonable deviation, as well as for the recovery of punitive

---

[5] West End does not move to dismiss "Count I – Breach of Contract."

damages.  In each case, one party brings claims arising from the transportation of goods against the motor carrier (*e.g.*, truck) responsible for such transportation.  *See Assicurazioni Generali v. Harbor Freight Transp. Corp.*, 2021 U.S. Dist. LEXIS 71935 (D.N.J. Apr. 14, 2021) (finding that the FAAAA preempted negligence and breach of contract claims brought by Italian-based seller of goods against trucking and warehouse company that was hired to transport aircraft parts from Port Elizabeth, New Jersey to a New Jersey warehouse for one leg of the aircraft parts eventual shipment to Canada, but where shipment was damaged); *see also Mrs. Ressler's Food Prods. v. KZY Logistics, LLC*, 2017 U.S. Dist. LEXIS 143255 (D.N.J. Sept. 5, 2017) (finding that the FAAAA preempted unjust enrichment claim brought against broker of motor carrier services that was hired to help coordinate the transport of products from Pennsylvania to California, but where shipment was damaged).  In every case the courts found that the state law-based claims at issue sufficiently "related to" a motor carrier's price, route, or service with respect to the "transportation of property," such that the FAAAA was implicated, and the state law-based claims were necessarily preempted.

In rebuttal, Siaci does not directly address whether the FAAAA preempts its state law-based negligence, gross negligence, breach of bailment, and conversion claims, as well as its prayer for punitive damages, against West End.  Instead, Siaci raises two arguments that miss the point.

First, Siaci asserts that the cases West End cites to are governed by the Carmack Amendment, rather than the FAAAA.  But the Carmack Amendment is only implicated in "interstate-shipping contract [and tort] claims alleging loss or damage to property."  *Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. Of Am., Inc.*, 762 F.3d 332, 336 (3d Cir. 2014).  Here, West End was involved only in an intrastate shipment from the pier in Newark, New Jersey to XPO Logistics's warehouse in Monroe Township, New Jersey.  D.E. 44

9

"Siaci Opp'n" at 4-5.  West End asserts only that the FAAAA applies and the cases it cites to support that proposition.  Analysis of just two cases, *Mrs. Ressler's Food Prods.* and *Assicurazioni Generali*, makes it clear that Siaci's interpretation of West End's cited cases is misleading.

With respect to *Mrs. Ressler's Food Prods.*, while it is true that the case involved an interstate shipment of food products from Pennsylvania to California and that the court dismissed the manufacturer's breach of contract and negligence claims brought against the two motor carriers because the claims were preempted by the Carmack Amendment, Siaci conveniently omits a couple of important facts.  First, the court *sua sponte* dismissed the breach of contract and negligence claims finding that they were preempted by the Carmack Amendment, but these claims were not raised in the pending motion before the court.  *See* 2017 U.S. Dist. LEXIS 143255, at *12-13.  Second, the actual pending motion was a motion to dismiss, brought by a broker, third-party defendant, asserting that the FAAAA and ICCTA preempted the third-party plaintiff's unjust enrichment claim, which the court did in fact grant.  *Id*.  Thus, Siaci's argument implying that the FAAAA did not apply in *Mrs. Ressler's Food Prods.*, because the court *sua sponte* found that the Carmack Amendment also applied, is misplaced.

With respect to *Assicurazioni Generali*, where the pending motion before the court was one brought by a motor carrier that was involved solely in the intrastate leg of an ultimately international shipment of goods, the court found that the FAAAA preempted the breach of bailment claim brought by an Italian-based seller of goods.  *See* 2021 U.S. Dist. LEXIS 71935, at *2-5.  Notably, like here, the motor carrier moved to dismiss a negligence claim, but the court did not ultimately need to address the argument that the negligence claim was also preempted by the FAAAA because the Italian-based seller of goods conceded as to that argument.  *Id.* at *5.  Siaci, again, mischaracterizes this case as being one governed by the Carmack Amendment, to the

10

exclusion of the FAAAA, by quoting a portion of the court's reference to a Second Circuit case concerning the Carmack Amendment. But what Siaci leaves out is the sentence in the court's opinion immediately following that reference: "[t]he instant case involves another piece of comprehensive federal legislation, the FAAAA, which also [like the Carmack Amendment] directly addresses the issue of a shipper's compensation for injury to its property." *Id.* at *4. In other words, the court mentioned the Carmack Amendment in support of its proposition that courts should be reluctant to supplement comprehensive federal legislation with common law, like the FAAAA, but not for the proposition that its ultimate decision was grounded in the Carmack Amendment.[6]

Additionally, the motor carrier moving to dismiss in *Assicurazioni Generali* was involved only in the intrastate leg of the shipment at issue. Thus, Siaci's attempt to mischaracterize and distinguish this case as one involving only an interstate shipment is futile. Instead, the Court finds this case persuasive to West End's position.

Next, Siaci argues that state law-based claims for injury to persons or property are not preempted because there is no federal legislation expressly authorizing such preemption in cases limited to intrastate transportation of property. Siaci Opp'n at 5-6. Specifically, Siaci questions Congress's intent to preempt "local motor truck carriage relating to cargo loss and damage[.]" *See id.* at 6. West End responds that the question of whether the FAAAA preempts state law-based non-contractual claims against motor carriers and brokers involving both intrastate and interstate

---

[6] Siaci incorrectly states that the court in *Assicurazioni Generali* further explained its reference to the Carmack Amendment in a stay ordered later in the proceedings. *See* Siaci Opp'n at 4. The context of that stay involved a party seeking to intervene in the case, and in turn, if successful with its intervention, to stay the proceedings, because it was involved in liquidation proceedings in South Carolina. *See Assicurazioni Generali v. Harbor Freight Transp. Corp.*, 2022 U.S. Dist. LEXIS 11225, at *4-9 (D.N.J. Jan. 21, 2015) (granting motion to intervene and "[i]n the interest of facilitating a uniform and orderly liquidation process, the Court will stay the present action pending the liquidation proceedings in South Carolina.").

shipments is well-settled.  D.E. 45 "Reply" at 4.  For support, West End cites to a series of cases from sister courts reinforcing its proposition that the FAAAA preempts state law-based non-contractual claims in cases involving damage to goods that were shipped in intrastate and interstate shipping.  *See, e.g.*, *Luccio v. UPS, Co.*, 2017 U.S. Dist. LEXIS 13069, at *4-5 (S.D. Fla. Jan. 31, 2017) (finding that FAAAA preempted plaintiff's negligence claim against UPS for mishandling of cryopreserved embryos in intrastate shipment across Florida, as well as that "case law and statutory interpretation support the conclusion that the FAAAA was intended to apply to intrastate as well as interstate shipping unless otherwise exempted.").  The Court agrees with its sister courts, and thus, West End.

Additionally, the Court finds it notable that the specific provision providing for preemption pursuant to the FAAAA is titled, "Federal Authority over Intrastate Transportation," 49 U.S.C. § 14501(c)(1).  The Court will not ignore such a clear expression by Congress to preempt certain state law-based claims.  Thus, the Court concludes that the FAAAA applies to the intrastate transportation of property by motor carriers, which is directly at issue with respect to West End here.  Accordingly, Siaci's state law-based negligence, gross negligence, breach of bailment, conversion, and punitive damages claims against West End are preempted by the FAAAA.

Furthermore, Siaci's prayer for punitive damages from West End as a carrier, based on its gross negligence claim, is also preempted by the FAAAA.  Like Siaci's claims other non-contractual claims, its prayer for punitive damages seeks to enlarge or enhance the existing bargain between Siaci and West End, such that FAAAA preemption is implicated.  *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (holding that FAAAA preempts state law punitive damages because they represent an enlargement or enhancement of the parties' bargain); *Deerskin Trading Post v. UPS of Am.*, 972 F. Supp. 665, 673

(N.D. Ga. 1997) (finding that FAAAA preempted, *inter alia*, plaintiff's claims for negligence, gross negligence, and punitive damages).  Thus, the Court concludes that Siaci may not recover punitive damages from West End, a motor carrier, as it would be an enlargement or enhancement of Siaci and West End's existing, and as such this type of relief is preempted by the FAAAA.

Finally, the Court notes that at least one of the nonmoving defendants is not a motor carrier or broker of motor carrier services within the meaning of the FAAAA.  As such, the FAAAA does not necessarily preempt Siaci's state law-based non-contractual claims against all defendants.  But because the first four counts alleged in the Amended Complaint do not differentiate between the motor carrier- and non-motor carrier-defendants, the Court will dismiss these state law-based non-contractual claims.

Accordingly, the Court will dismiss the negligence, breach of bailment, and conversion claims brought against Defendants as carriers, the material and unreasonable deviation and gross negligence claims brought against West End as a carrier, and the prayer for punitive damages from West End without prejudice.

2. *West End was not a warehouseman*

Siaci brings five additional claims solely against West End as a warehouseman: breach of contract, breach of warranty, negligence, breach of bailment, and gross negligence.  Amended Complaint ¶¶ 47-63.  With respect to the gross negligence claim, Siaci seeks punitive damages from West End.  *Id.* ¶ 63.  Whether these claims and the prayer for punitive damages may proceed turns on whether West End's alleged holding of the Cosmetics Shipment for eight (8) days, before making final delivery to XPO Logistics, made West End a "warehouseman."  For the reasons that follow, the Court concludes that West End's status never changed to that of a warehouseman, and as such, the FAAAA preempts Siaci's breach of warranty, negligence, breach of bailment, and

gross negligence claims, as well as its prayer for punitive damages, because West End was a motor carrier and not a warehouseman.

First, the Court must answer whether if by holding the Cosmetics Shipment for 8 days prior to final delivery West End lost its status as a motor carrier and became a warehouseman.  If the answer is yes, then the FAAAA would not preempt Siaci's claims and prayer for punitive damages against West End because the FAAAA applies only to motor carriers, brokers of motor carrier services, and freight forwarders.  *See* 49 U.S.C. § 14501(c)(1).  If the answer is no, then the FAAAA would preempt Siaci's claims and prayer for punitive damages against West End because West End's status was that of a motor carrier from the time it picked up the Cosmetics Shipment from the pier in Newark, New Jersey to the time it delivered the same to XPO Logistics.  The Court concludes that the answer is no.

West End claims that its status never changed to that of a warehouseman because its duty as a motor carrier continued until it made final delivery to XPO Logistics.  Mot. at 8-9.  While not directly on point, West End cites to a series of persuasive cases, where courts found that a carrier's duty continues until final delivery.  *See* Mot. at 8-10 (citing, *e.g.*, *Estherville Product Co. v. Chicago, R.I. & P.R. Co.*, 57 F.2d 50, 52-53 (8th Cir. 1932); *M.C. Mach Sys. v. Maher Terminals*, 164 N.J. 192, 211 (2000); *Johnson & Dealaman, Inc. v. Wm. F. Hegarty, Inc.*, 93 N.J. Super. 14, 224 A.2d 510, 513 (App. Div. 1966)).  Siaci responds that West End's status did change from motor carrier to warehouseman because the Cosmetics Shipment was no longer "in transit" when West End allegedly held the goods for 8 days at its own warehouse prior to final delivery.  Siaci Opp'n at 8.  The Court finds Siaci's position unpersuasive.

A general comparison of who is a carrier and his duty versus who is a warehouseman and his duty is instructive.   A carrier is someone who "holds himself out to the public as engaged in

the business of transportation of persons or property from place to place for compensation[.]"  *See Gomez v. H&M Int'l Transp., Inc.*, 2021 U.S. Dist. LEXIS 13464, at *11 (D.N.J. Jan. 25, 2021). The duty of a carrier is to "mak[e] delivery to the consignee[, XPO Logistics], entitling the latter to notice of arrival of the goods and a reasonable time for their removal[.]"  *See Burr v. Adams Exp. Co.*, 71 N.J.L. 263, 268 (1904) (citations omitted).  Whereas, a warehouseman is someone who is "lawfully engaged in the business of storing goods for profit."  *See Dearborn Chem. Co. v. Div. of Tax Appeals, Etc*, 135 N.J.L. 580, 582-83 (1947) (citing 1910 N.J. Comp. Stat. § 58).  The duty of a warehouseman is to "take reasonable care of the goods that are trusted to his charge." 1907 N.J. Laws 133, § 21.  But a "carrier storing goods at the instance of the consignor has been held to be a warehouseman under the duty of reasonable care."  *See Maritime Petroleum Corp. v. Jersey City*, 1 N.J. 287, 293 (1949) (citing *Armstrong Rubber Co. v. Erie R.R. Co.*, 103 N.J.L. 579 (1927).

Here, based on this general comparison of a carrier versus a warehouseman, it is clear that West End was a carrier because it was engaged to transport the Cosmetics Shipment from the Ship at the pier in Newark, NJ to Monroe Township, New Jersey, where it had a duty to make delivery to XPO Logistics.  Specifically, West End was a motor carrier because it was engaged to fulfill its duty as carrier via truck.  It is also clear that West End was not a warehouseman because nothing in the Amended Complaint reasonably leads to the conclusion that West End was in the business of storing goods for profit.  Additionally, while it is possible for a carrier to also be a warehouseman, the facts in the Amended Complaint do not support that conclusion either because West End was not storing the Cosmetics Shipment "at the instance of the consignor."  Thus, the Court finds that West End was not a warehouseman.

Furthermore, the Court notes that Siaci's argument that West End's status as a carrier and/or warehouseman turns on whether the Cosmetics Shipment was "in transit" at all times between the time West End first picked up and finally delivered the same is ultimately irrelevant. Siaci cites two cases that it claims support its position that because the Cosmetics Shipment was not in transit for 8 days that West End's status changed from motor carrier to warehouseman. But Siaci's cited cases do not stand for this proposition. The Court will distinguish Siaci's cited cases to underscore this point.

First, *Boonton Handbag Co. v. Home Ins. Co.*, 125 N.J. Super. 287, 288-89 (App. Div. 1973), is a case about the scope of a motor carrier's liability under an insurance policy, where the policy only covered the loss of goods "while loaded for shipment and in transit[.]" In *Boonton Handbag Co.*, the goods had already arrived at their final destination and were merely being stored prior to unloading when they were stolen. *Id.* at 289. The court found that the loss of the goods was not covered by the motor carrier's insurance policy because the goods were no longer in transit at the time of the theft. *Id.* at 289-90.

Second, like in *Boonton Handbag Co.* but unlike here, *Den Gre Plastics Co., Inc. v. Travelers Indem. Co.*, 107 N.J. Super. 535, 537 (Law Div. 1969), is also a case about the scope of an insurance policy, where the policy only covered the loss of goods "while [the goods were] actually in transit[.]" In *Den Gre Plastics Co., Inc.*, the plaintiff's employee loaded the plaintiff's trucks with the goods, moved the truck ten (10) feet within the plaintiff's premises, and the truck with the goods was subsequently stolen before being picked up by another one of the plaintiff's employees for delivery days later. *Id.* at 537-38. The court found that the loss of the goods in the stolen truck was not covered by the insurance policy because the goods were never actually in

16

transit, as the 10-foot movement of the truck did not initiate "the process of movement toward its destination[.]" *Id.* at 542-43.

The Court does not find *Boonton Handbag Co.* nor *Den Gre Plastics Co., Inc.* persuasive for at least a couple of reasons.  First, this is not a case about the interpretation of an insurance policy.  Second, nowhere do the courts in *Boonton Handbag Co.* or *Den Gre Plastics Co., Inc.* outline: what a carrier is or its duty; what a warehouseman is or its duty; nor what bearing the goods being, or not being, in transit has on whether a carrier's status changes to warehouseman.  Thus, Siaci's reliance on these cases is misplaced.

Accordingly, the Court finds that based on the Amended Complaint, West End's alleged holding of the Cosmetics Shipment for 8 days prior to final delivery to XPO Logistics did not make West End a warehouseman.  As such, for the reasons expressed in *supra* Section III.B.I., Siaci's non-contractual claims for breach of warranty, negligence, breach of bailment, and gross negligence, as well as its prayer for punitive damages, brought against West End as a warehouseman are preempted by the FAAAA because West End was not a warehouseman.

Additionally, because the Court concludes that West End was not a warehouseman, it follows that Siaci's breach of contract claim against West End as a warehouseman must be dismissed as duplicative of Siaci's breach of contract claim against West End as a carrier.

Accordingly, the Court dismisses all five of Siaci's claims brought against West End as a warehouseman, as well as Siaci's prayer for punitive damages, without prejudice.

## C.   Vessel Interests' Crossclaims are Preempted by the FAAAA

The Court next addresses West End's contention that the FAAAA preempts Vessel Interests' state law-based contribution and indemnification crossclaims, and as such those claims should be dismissed.  Vessel Interests raise two primary arguments against FAAAA preemption

of their contribution and indemnification crossclaims against West End.[7]  For the reasons that

follow, the Court agrees with West End.

1.      *Federal maritime law does not apply to Vessel Interests' crossclaims*

First, Vessel Interests argue that their crossclaims are premised on federal maritime law

rather than state law.  Vessel Interests Opp'n at 3.  West End responds that Vessel Interests fail to

provide any legal authority upholding the proposition that federal maritime claims apply against a

motor carrier for alleged damages sustained to cargo during its transportation.  Reply at 5-6.

To properly address Vessel Interests' first argument, the Court will outline the scope of

federal maritime jurisdiction.  Maritime-based claims for contribution and indemnification may be

grounded in either contract or tort law in limited circumstances.  The Court ultimately concludes

that Vessel Interests' contribution and indemnification crossclaims fall outside the scope of federal

maritime jurisdiction.

First, "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal

law controls the contract interpretation."  *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S.

14, 22-23 (2004) (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961).  "[S]o long as a

bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime

commerce – and thus it is a maritime contract," regardless of whether "it also provides for some

land carriage."  *Id.* at 27.  The specific federal law that then governs the contract interpretation is

the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30702(a); *see also Norfolk S. Ry. Co.*,

543 U.S. at 29 ("COGSA governs bills of lading for the carriage of goods from the time when the

---

[7] Vessel Interests make two additional passive arguments: additional discovery is needed to
determine if there is a contractual contribution or indemnification claim; and references to the
Carmack Amendment and other federal law preemption cases are irrelevant.  *See* D.E. 43 "Vessel
Interests" Opp'n" at 8-10.  Because the Court dismisses Vessel Interests' counterclaims based on
the federal maritime law and FAAAA preemption arguments, and does so without prejudice, then
the Court need not reach these two additional arguments.

goods are loaded on to the time when they are discharged from the ship."). But, while COGSA may govern the "land carriage" portion of an ultimately international shipment, involving primarily "sea carriage," it only does so where the parties specifically stipulate that it does in a maritime contract. *Norfolk S. Ry. Co.*, 543 U.S. at 29.

Here, One issued or caused to be issued a bill of lading, which provided for the "substantial carriage of goods by sea" because the Cosmetics Shipment was to be, and in fact was, transported by sea from Genoa, Italy to the Port of New York and New Jersey, and later delivery to the pier in Newark, New Jersey. *See* Amended Complaint ¶ 16. But because the last leg of the shipment was local, as it was confined to New Jersey, and did not involve "sea carriage," as it involved the transportation of the Cosmetics Shipment via truck, federal maritime law presumably does not apply to the crossclaims against West End, who was only involved in that last leg of the shipment. This presumption would be overcome and the relevant federal maritime law, COGSA, would apply to West End, if it was shown that the parties specifically stipulated to that in a maritime contract. Here, neither the Amended Complaint nor Vessel Interests' crossclaims plead that any maritime contract existed that specifically extended the scope of the COGSA to West End's local portion of the ultimately international shipment. Additionally, there is no indication in the pleadings that Vessel Interests and West End had any sort of contractual relationship with each other, such that Vessel Interests' crossclaims against West End would fall within the scope of federal maritime law.

But federal maritime law may apply and allow a noncontractual contribution or indemnification action to lie where parties do not have a contractual relationship if the action is derived from an underlying maritime tort. *See, e.g.*, *Tri-State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969) (finding that maritime law governed noncontractual

indemnification claim because underlying tortious conduct occurred in navigable waters); *White v. Johns-Manville Corp.*, 662 F.2d 243, 247 (4th Cir. 1981) (finding that tort occurring on navigable water is a maritime claim).  "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Neely v. Club Med Management Servs.*, 63 F.3d 166, 178-179 (3d Cir. 1995) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 554 (3d Cir. 1995)).

"For tort claims, the locality test requires that 'the tort occurred on navigable water or…injury suffered on land was caused by a vessel on navigable water." *Id.* (citation omitted). The maritime connection requires determining whether: (1) the "general features of the type of incident involved to determine whether the incident has a potentially disrupting impact on maritime commerce[;]" and (2) the "general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (citation omitted).

Here, Vessel Interests' contribution and indemnification crossclaims are claims based in tort law.  But they did not occur on "navigable water" nor were they "caused by a vessel on navigable water," and as such cannot satisfy the locality test for classification as a "maritime tort." The Court notes that both cases Vessel Interests cite in support of their position involve torts that either occurred on navigable water or on land caused by a vessel on navigable water.  *See Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106 (1974) (concluding that longshoreman injured on a ship at sea could recover from negligent stevedore in a direct action and shipowner and charterer were properly granted contribution from negligent stevedore as they were entitled to same right of recovery as longshoreman); *see also Federal Marine Terminals, Inc. v. Burnside Shipping Co.*,

20

394 U.S. 404 (1969) (allowing maritime tort claim to lie where longshoreman fell into an unprotected deep tank opening and was killed while readying a vessel for its grain cargo).

Additionally, Vessel Interests' crossclaims do not satisfy the required "maritime connection" because at best the crossclaims have only a tenuous maritime connection: the Cosmetics Shipment was shipped overseas from Italy to the United States. Maybe the maritime connection would be less tenuous if the parties were certain that the cargo was lost at sea because the events giving rise to the tort claims would at least have occurred at sea, but the Court will not indulge such speculation. As such, the Court finds that Vessel Interests' contribution and indemnification crossclaims are not maritime torts falling within the scope of federal maritime law.

2.      *Vessel Interests' crossclaims are preempted by the FAAAA*

Alternatively, Vessel Interests argue that even if their crossclaims were premised on state law that there would still be no valid basis for preemption pursuant to the FAAAA. Vessel Interests Opp'n at 4. The Court's analysis with respect to Siaci's state law-based non-contractual claims against West End, *supra* Section III.B., also applies with respect to Vessel Interests' contribution and indemnification crossclaims because they are also state law-based non-contractual claims, which are preempted by the FAAAA. *See Peening Techs. Equip., LLC v. Northeast Riggers, Inc.*, 2022 Conn. Super. LEXIS 54, at *5-6 (Conn. Supp. Jan. 10, 2022) (concluding that the FAAA preempted indemnification claim seeking damages relating to transportation of machine to customer because the "claim is aimed at the core of [the motor carrier or broker's] services, arranging for the movement of goods[.]"); *see also Custom Stud, Inc. v. Meadow Lark Agency, Inc.*, 566 F. Supp. 3d 950, 954-956 (D. Minn. 2021) (finding that all counterclaims, including those for contribution and indemnification, derived from alleged actions leading up to or following the

21

transportation of property based on party's motor carrier services as a broker and all require enforcement of state law, such that Congress intended their preemption pursuant to the FAAAA).[8]

In *Tokio Marine Am. Ins. Co. v. Jan Packaging*, 2020 U.S. Dist. LEXIS 240798, at *3-4 (D.N.J. Dec. 18, 2020), multiple parties agreed to facilitate and transport the shipment of electronic equipment, by motor and sea carrier, from California to China. Some of the equipment was damaged upon arrival in New Jersey, which resulted in the filing of claims and crossclaims by different parties. *Id.* One of the motor carriers involved in the transport of the equipment from Massachusetts to New Jersey, Jan Packaging, filed crossclaims against the other motor carriers involved in that same leg of the shipment, including for contribution and indemnification. *Id.* One of the other motor carriers, MTS, moved to dismiss, *inter alia*, Jan Packaging's contribution and indemnification crossclaim. *Id.* MTS argued that the FAAAA expressly preempted that crossclaim. *Id.* at *14-15. The court agreed with MTS and concluded that the crossclaim (like the separate negligence crossclaim) "relate[d] to motor carrier services that gave rise to this action and [is] therefore preempted by the FAAAA." *Id.* at *15-16. Specifically, the court reasoned that Jan Packaging's contribution and indemnification crossclaim hinge on the alleged negligence of MTS, because "Jan Packaging alleges that, in the event it is held liable to [the plaintiff] for any loss or damage to the equipment, such liability was caused or brought about the acts or omissions of MTS." *Id.* at *16-17. It follows that because the contribution and indemnification crossclaim was premised on the acts or omissions giving rise to a state law-based claim, negligence, that was preempted by the FAAAA, then the crossclaim was also necessarily preempted by the same. *See*

---

[8] The Court notes that further analysis would have been required here if Vessel Interests and West End had a direct contractual relationship because the FAAA does not preempt routine breach of contract claims. As pled, Vessel Interests' crossclaims do not allege a contractual relationship between Vessel Interests and West End, and therefore, the Court will not assume that its crossclaims arise out of a contract and fall outside the ambit of the FAAAA.

*id.* Thus, the court dismissed both the negligence and contribution and indemnification crossclaims brought against Jan Packaging.  *Id.* at *17.

The reasoning in *Tokio Marine Am. Ins. Co.* is guiding here.  Vessel Interests' contribution and indemnification crossclaims against West End arise, not from a contractual relationship between the two parties, but rather from acts or omissions that also gave rise to Siaci's negligence, breach of bailment, and conversion claims.  Because those claims brought by Siaci are preempted by the FAAAA, as to West End, then the acts or omissions that gave rise to those claims also cannot serve as the basis for any crossclaims brought against West End.  Vessel Interests' contribution and indemnification crossclaims attempt to do just that.  *See id.* at *14-15 (citing *Nature's One, Inc. v. Spring Hill Jersey Cheese, Inc.*, 2017 U.S. Dist. LEXIS 160888, at *5-8 (S.D. Ohio Sept. 29, 2017), where court concluded "because the plaintiff's [contribution and indemnification] claims alleged negligence in the carrier's performance of its services, they were preempted under the 'expansive' scope of the FAAAA as relating 'to a price route, or service of *any motor carrier*.'") (emphasis in original) (internal quotation omitted).  Thus, Vessel Interests' crossclaims are also preempted by the FAAAA.

Accordingly, Vessel Interests' state law-based crossclaims will be dismissed without prejudice.

## IV.      CONCLUSION

For the reasons stated herein, West End's motion to dismiss will be **GRANTED**.  As such, "Count Two – Negligence," "Count Three – Breach of Bailment," and "Count Four – Conversion" brought against Defendants as carriers, "Count Five – Material & Unreasonable Deviation" and "Count Six – Gross Negligence" brought against West End as a carrier, all claims brought against West End as a warehouseman, Siaci's prayer for punitive damages from West End, as well as

Vessel Interests' crossclaims for contribution and indemnification will be **DISMISSED** *without prejudice*.  An appropriate Order accompanies this Opinion.

Dated: November 14, 2022

_____

Hon. Evelyn Padin, U.S.D.J.